**Howard Lee JARRELL, Petitioner,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. 753–E.**

United States District Court
N. D. West Virginia.

Aug. 11, 1967.

No attorney for plaintiff.

C. Donald Robertson, Atty. Gen. of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner, Howard Lee Jarrell, is serving a twenty-five year sentence in the West Virginia Penitentiary for a 1960 armed robbery conviction. This is his fifth attempt to obtain federal habeas corpus relief in this Court.

In his most recent effort prior to this petition, Jarrell v. Boles, 1477–W (January 28, 1965), Jarrell claimed that a co-

erced statement had been used against him at the trial. This Court, in an opinion by the late Judge Paul, did not reach the merits of the coercion claim, but found, after studying the trial transcript, that the admission of the statement under the circumstances of this case could not operate to void the conviction.

Judge Paul explained his conclusion as follows:

Not only was no objection made to the introduction of the statement, it was introduced at the insistence of his counsel. On cross-examination of Jarrell, who testified on his own behalf, the Prosecuting Attorney was attempting to show some discrepancies between Jarrell's testimony and his prior statement. His attorneys insisted upon the production and introduction of the full statement, which was done. * * * In the main the statement is consistent with Jarrell's testimony on the stand, and it is easy to see why his counsel believed it was *good tactics* to have the statement introduced to refute and remove from the minds of the jury implications of inconsistency. There was no occasion for the trial court to conduct a preliminary hearing on the question of voluntariness under these circumstances, and Jackson v. Dennó, 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908] (1964) and Boles v. Stevenson, 33 U.S.L. Week 3181 [379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109] (U.S. Nov. 16, 1964), have no application. (Emphasis added).

The conclusion that *Jackson* is not applicable here is supported by the recent case of Williams v. Anderson, 362 F.2d 1011 (3 Cir. 1966).

Jarrell's present petition raises essentially the same complaint as his last. The only difference is that now his claim is framed in terms of an additional conclusion—ineffectiveness of counsel. In other words, Jarrell now argues that the failure of his attorneys to object to the admission of the statement denied him the right to the effective assistance of counsel.

Since Judge Paul had anticipated this new attack in the portion of his opinion quoted above, it may initially appear that this petition can be dismissed as repetitious under 28 U.S.C. § 2244. However, a recent case decided by the United States Court of Appeals for this Circuit, Ledbetter v. Warden, Maryland Penitentiary, 368 F.2d 490 (4 Cir. 1966), has cast some doubt on the completeness of the earlier opinion and suggested the need for further inquiry.

In *Ledbetter*, the Court affirmed findings, made after a hearing in a federal district court, that the petitioner's confessions were involuntary and that the failure of trial counsel to object to their admission did not constitute an intelligent waiver of his constitutional claim.

After holding Ledbetter's confessions involuntary, under the "totality of circumstances" test, which has grown "increasingly meticulous through the years," 368 F.2d at 493, the Fourth Circuit concluded that there had been no waiver. 368 F.2d at 494. First, the Court noted that the confessions were "the *only* evidence linking Ledbetter to his crime." Secondly, the Court observed:

Any intimation of a deliberate design to knowingly forego the federal constitutional claim is negated by the fact that at the time of the trial, there was no basis on which a trial attorney could reasonably object to this evidence. Ledbetter was tried in 1960, three years before the decision in Haynes v. State of Washington, supra, and other decisions which have subsequently fashioned the standard by which the procurement of this pretrial confession is to be judged.

The Court concluded:

Since the confession and the statement were the only evidence linking Ledbetter to the offense, it is patent that the attorney—whom the District Court found to be competent—would have objected strenuously to their admission if he had thought that he had any legal ground to do so.

■ The Court in *Ledbetter* recognized that an attorney's failure to consult with his client does not necessarily foreclose the possibility of waiver. 368 F.2d at 493–494. On the contrary, Henry v. State of Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), makes clear that it is only the "exceptional" case where an attorney's "deliberate choice" of strategy does *not* bind his client.[1] The Court simply found there had been no such strategic choice by Ledbetter's attorney, thus obviating the need to inquire whether Ledbetter could have been bound by such a choice.[2]

■■ *Ledbetter* may suggest that a full appraisal of a confession's voluntariness is necessary *before* a court inquires into the possibility of waiver. However, in *Ledbetter* there was no evidence at all suggesting waiver. Where, as in the instant case, there is ample evidence in the trial record to indicate such a strategic decision was made, it seems permissible and appropriate to inquire initially into the issue of waiver. If a binding and valid waiver is found, it is immaterial whether the confession was involuntary.

■ On the basis of an examination of the state trial court transcript containing Jarrell's entire testimony, this Court finds that Petitioner did effectively waive his right to contest the voluntariness of his statement.[3] The Court further finds no basis to conclude or suspect that Jarrell was ineffectively represented by counsel.

The transcript indicates the defense strategy was to employ the statement to corroborate Jarrell's testimony that he knew of the robbery plan but was not a participant in its execution. The first reference to the statement was made by the defense. [Tr. 13]. On cross-examination by the state, Petitioner admitted both the truth and the voluntariness of the statement. [Tr. 32–33].

■ It is true that Jarrell did comment about his condition at the time he gave the statement in such a way as to, at least momentarily, raise a question about its voluntariness. Petitioner testified he was suffering from a dislocated shoulder, and even gave some indication that coercion occurred.[4] But, when the statement was introduced by the state, there was no objection. Further, when

1. "[C]ounsel's deliberate choice of the strategy would amount to a waiver binding on petitioner. * * * Although trial strategy adopted by counsel without prior consultation with an accused will not, *where the circumstances are exceptional,* preclude the accused from asserting constitutional claims, * * * we think that the deliberate bypassing by counsel of the contemporaneous-objection rule as a part of trial strategy would have that effect in this case." (Emphasis added.)

2. *Henry* did not specify what "exceptional" circumstances are necessary before an attorney's tactical decision will not bind his client. Perhaps, another way of stating the principle is to say that a client is not bound whenever the attorney's choice of tactics is so erroneous as to amount to ineffective assistance of counsel. See United States ex rel. Machado v. Wilkins, 351 F.2d 892, 895 (2d Cir. 1965).

3. It is not clear whether the decision not to challenge the statement was one about which Jarrell's attorneys consulted their client. If there was no such consultation, the tactical decision was binding nonetheless, since, under *Henry,* see Note 1, supra, only "exceptional" circumstances prevent attorneys from binding their clients. Nothing "exceptional" occurred here to make such a binding decision unfair, since, as will appear in the remainder of the opinion, there was good reason for Petitioner to want the statement admitted.

4. At page 33 of the transcript, the following exchange on cross-examination is recorded:

   Q And it was given freely and voluntarily, wasn't it?

   A Yes, he promised to take me to the hospital and all, after I gave this statement, so they could set my shoulder, I had a dislocated shoulder.

   Q Did anybody do anything to make you give this statement?

   A No, they didn't force me.

   Q Was it given by you freely and voluntarily?

   A Well.

the defense on redirect examination adduced testimony about the taking of pills by Petitioner at the time he signed the statement, defense counsel, in response to an objection, expressly stated that no challenge to voluntariness was being made. [Tr. 68]. From a survey of Petitioner's entire testimony it seems clear that the sole reason for defense references to Jarrell's shoulder condition and his pill-taking was to obtain jury sympathy without discrediting the truth of his statement.[5]

To conclude, the Court reaffirms its earlier holding that there was no need before the state trial court for a Jackson v. Denno voluntariness hearing, since that issue was never raised. In addition, although it seems unlikely that the statement was not a voluntary one, defense counsel were aware of the possibilities for such an attack, yet deliberately decided against it. In the absence of any "exceptional" circumstances, referred to in *Henry*, counsel's decision was binding on their client.

As for Jarrell's claim of ineffective representation, even if the Court were to hold that counsel erred in not contesting voluntariness (which it does not), at worst, what took place was an error in trial tactics which provides no basis for finding a federal constitutional deprivation. Tompa v. Com. of Virginia ex rel. Cunningham, 331 F.2d 552 (4 Cir. 1964).[6]

Accordingly, an order will be entered denying the relief sought and dismissing the petition.[7]

---

5. It might also be well to note that, unlike *Ledbetter*, here the statement was by no means the sole evidence against Jarrell. In fact, the state did not even introduce the statement as part of its case-in-chief. Merely confining our examination to that portion of the transcript available here, the Court notes that two letters, written by Jarrell from his jail cell, in which he sought to suborn the perjury of a fellow participant in the robbery, certainly were much more damaging than was the introduction of a largely exculpatory statement.

6. The suggestion in *Henry*, Note 1, supra, that some tactical decisions by an attorney cannot bind his client implies that the holding in *Tompa* must be qualified by stating that such a strategic error is not ineffective assistance of counsel *unless* "exceptional" circumstances exist. Under this interpretation, Jarrell's claim still fails.

7. The recent case of Wilson v. Bailey, 375 F.2d 663, (4 Cir. 1967), provides added support for the result reached here.