STATE of South Dakota, Appellee,

v.

Lyle ABRAHAM, Appellant.

No. 13487.

Supreme Court of South Dakota.

Considered on Briefs Feb. 22, 1982.

Decided April 28, 1982.

Mark W. Barnett, Asst. Atty. Gen., Pierre, for appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

David J. Trygstad of Jorgensen & Trygstad, Sioux Falls, for appellant.

FOSHEIM, Justice.

Lyle Abraham appeals his conviction of aggravated assault. We affirm.

The odor of glue brought Officer O'Neill to inmate Abraham's (appellant) cell at the State Penitentiary. The officer reported this to Sergeant Walters and the two of them asked appellant for a plastic bottle which was visible in his cell and was thought to contain glue. Appellant refused to give up the bottle and O'Neill and Walters reported the matter to Captain Stepanek. Captain Stepanek attempted to talk appellant into leaving the cell peaceably and informed him that he would have to

enter the Adjustment Center to await a hearing by the disciplinary board. Appellant refused and sat back on his bed and began sniffing from the plastic bottle. Captain Stepanek then used mace on appellant and ordered O'Neill and Walters to enter the cell and handcuff and take him to the Adjustment Center.

After appellant was maced, he moved to the rear of the cell. When O'Neill and Walters entered, appellant hit O'Neill on the head with part of a chair. Captain Stepanek again maced appellant which caused him to drop the chair part and plastic bottle to the floor. Appellant was then subdued and handcuffed.

Prior to the disciplinary hearing resulting from this incident appellant was extended a "grant" of use immunity by the Attorney General, pursuant to SDCL 23A–14–29. That statute reads:

> No witness shall be excused on the basis of his privilege against self-incrimination from testifying or providing other information in a proceeding before a court, grand jury, administrative agency or legislative committee of this state for a civil, criminal or administrative action whenever the prosecuting attorney or appropriate authority has granted the witness immunity pursuant to this section or whenever the magistrate or circuit court judge presiding over the proceeding has ordered such testimony. No testimony or other information compelled under an order or grant of immunity, or any information directly or indirectly derived from such testimony, shall be used against the witness in any civil or criminal proceeding, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

The "grant" of immunity, signed by the Attorney General provided.

> You are not required to testify before the Disciplinary Board, but if you do testify, your testimony at the Disciplinary Board proceeding may not be used in any criminal prosecution now charged or which may be charged by the State of South Dakota resulting from the acts which are the subject of the pending action before the Disciplinary Board.

> Any evidence other than your own testimony used against you at the disciplinary proceeding, any fruits of evidence obtained during the course of the investigation or prosecution of the proceeding before the Disciplinary Board will be inadmissible as evidence in any criminal prosecution now charged or which may be charged by the State of South Dakota resulting from the acts which are the subject of the pending action before the Disciplinary Board.

> This grant of 'use of immunity' does not prevent the State from prosecuting criminal charges stemming from the acts which are the subject of the pending action before the Disciplinary Board, but it does mean that the State prosecutor may not use the record of your Disciplinary Board proceeding to help him convict you in state court.

> This grant of use immunity will be binding on all prosecutors and law enforce [sic] officers of the State of South Dakota.

Appellant contends that the blanket provision in the immunity document which states: "Any evidence other than your own testimony used against you at the disciplinary proceeding ... will be inadmissible" [1] was a gratuitous act which effectively operated to bar his subsequent criminal prosecution. He further argues that he may have elected not to testify at the disciplinary hearing because of that "grant."

■ SDCL 23A–14–29 clearly implies that if the inmate testifies, the extended "grant" is accepted and he is immunized; but if the inmate is silent, he has rejected the "grant" of use immunity and it is consequently not a factor bearing upon a subse-

---

1. The transcript of the motion hearing is not before us, but the State's brief, which is uncontradicted by appellant's brief, states that, while appellant's motion to dismiss on the basis of immunity was denied, the trial court prohibited the State from using at trial a transcript of appellant's disciplinary hearing or reports admitted at that hearing.

quent criminal prosecution. Accordingly, appellant's silence at the disciplinary hearing operated as a total rejection of the "grant" of immunity. The State was consequently not bound by the terms of any part of the "grant" at any subsequent prosecution.

While appellant invokes the language of the "grant" to bar his subsequent prosecution, his argument is based on the constitutionally guaranteed protection against compulsory self-incrimination.[2] This is so because any protection derived from the "grant" of immunity, as authorized by SDCL 23A–14–29, stems from the Fifth Amendment's protection against self-incrimination.

The Fifth Amendment provides that no person 'shall be compelled in any criminal case to be a witness against himself.' The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

. . . .

[T]herefore, a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. *Kastigar v. United States,* 406 U.S. 441 [92 S.Ct. 1653, 32 L.Ed.2d 212] (1972). Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution. *Bram v. United States* [168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897)], *supra; Boyd v. United States* [116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886)], *supra.*

*Lefkowitz v. Turley,* 414 U.S. 70, 77–78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973).

In order to bring himself within the purview of the Fifth Amendment protection against compulsory self-incrimination, appellant first must show that his own testimony was compelled. *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976); *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *State v. Roth,* 84 S.D. 44, 166 N.W.2d 564 (1969). He has failed to do so. He chose to remain silent at his disciplinary hearing and no sanctions were imposed by the disciplinary board to compel his testimony. And appellant's efforts to exclude from trial any evidence adduced at his disciplinary hearing, other than his own testimony or its fruits, similarly fall without the purview of the Fifth Amendment. Since the protection against compulsory self-incrimination is personal to the witness so compelled, appellant cannot invoke the protection for that purpose. "[T]he Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." *United States v. Nobles,* 422 U.S. 225, 234, 95 S.Ct. 2160, 2168, 45 L.Ed.2d 141 (1975).

Appellant correctly argues that the Attorney General's "grant" of immunity exceeded the authorization contained in SDCL 23A–14–29. That statute limits immunity to a witness' compelled testimony and information directly or indirectly derived therefrom. The Attorney General's "grant" of immunity, embodied in the second paragraph of the "grant," purports to extend to any evidence used against the inmate at the disciplinary proceeding and the fruits of evidence obtained from the investigation or prosecution of such proceeding. This "grant" clearly overreaches the authority vested by the Legislature. However, in view of the conclusions herein expressed, we need not consider any consequences of the unauthorized portion of the "grant."

---

**2.** U.S.Const. amend. V, reads in part: "No person shall . . . be compelled in any criminal case to be a witness against himself[.]"

S.D.Const. art. VI, § 9, reads in part: "No person shall be compelled in any criminal case to give evidence against himself[.]"

■ Appellant also claims that the trial court should have granted him a hearing on his motion to dismiss for denial of equal protection on the ground that his prosecution was racially motivated. Appellant's counsel at trial presented an affidavit in support of that motion wherein he stated "it appears that there have been numerous incidents of alleged assaults on prison guards but that the only cases that are prosecuted are those involving an Indian defendant." The Court of Appeals for the Second Circuit, in *United States v. Berrios*, 501 F.2d 1207 (1974), developed a two-pronged test for judging claims of selective or discriminatory prosecution.

To support a defense of selective or discriminatory [*sic*] prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination."

*Id.* at 1211 (citations omitted). This test has been adopted by all the Circuit Courts of Appeals, the Eighth Circuit adopted it in *United States v. Swanson*, 509 F.2d 1205 (1975), and we adopt it now. The record contains no evidence to support the allegations contained in defense counsel's affidavit.[3] Appellant therefore has not established a prima facie showing of selective prosecution pursuant to the *Berrios* test and his motion to dismiss was properly denied.

Appellant also claims the court erred in its instruction to the jury. When the challenged instruction is read in conjunction with all the other instructions, we conclude no error exists. *State v. Townsend*, 89 S.D. 167, 231 N.W.2d 367 (1975).

The judgment of conviction is affirmed.

All the Justices concur.

---

**3.** There is no transcript before us of the motion hearing but appellant's argument on appeal indicates that no evidence was offered at the motion hearing in support of defense counsel's allegation of selective prosecution.